**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**US RAIL SYSTEMS, INC.,**

Plaintiff,

v. Case No.

**AMEER FADY ALGHUSAIN**, individually,
and **AMERICAN RAILWAYS LLC,**
a Michigan limited liability company,

Defendants.
_______________________________________/

**COMPLAINT**

Plaintiff US Rail Systems, Inc. ("Plaintiff" or "USRS") sues Defendants Ameer Fady Alghusain ("Alghusain") and American Railways LLC ("American Railways") (collectively, "Defendants"), and alleges as follows:

**PARTIES**

1. Plaintiff US Rail Systems, Inc. is a corporation of Florida, with its principal place of business at 91 Scenic Gulf Drive, Suite 250, Miramar Beach, Florida 32550. Plaintiff provides oversight of maintenance, operations, and delivery of complex electrified and high-speed rail systems in Florida and throughout the United States.

2. Defendant Ameer Fady Alghusain is an individual residing in California. Alghusain is also referred to in some records as "Ameer Al Ghusain." Alghusain is the sole owner and manager of Defendant American Railways LLC and is listed as its resident agent.

3. Defendant American Railways LLC is a limited liability company organized under the laws of the State of Michigan, Identification No. 802124075, with an address at 400

Renaissance Center, Floor 26, Detroit, Michigan 48243. American Railways is the Michigan entity that is identified on the specimen label for Application Serial No. 99,510,305 and that executed the March 23, 2026 assignment described below. Defendants operate, and hold themselves out to the public through, the websites americanrailways.com and usrailways.com and a LinkedIn account under the name "American Railways™."

4. Alghusain personally controls American Railways, directs its public statements about its history, marks, and experience, and is identified as the exhibitor contact for its Florida trade-show appearance described below. The false statements alleged in this Complaint were published in the name of American Railways and under Alghusain's direction and control, and Alghusain is liable for them both as the individual who directed them and as the sole owner who controls the entity that published them.

5. Defendants are competitors of Plaintiff. Plaintiff and Defendants operate in railway industry and offer services related to the maintenance and operation of rail systems.

6. This is an action for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and for deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213, arising from Defendants' publication, in commercial advertising directed to rail-industry customers, of false and misleading statements about when the American Railways business was founded, how long it has owned and operated the marks at issue, and the scale of the rail work it has performed.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Count I under 28 U.S.C. §§ 1331 and 1338(a), because it arises under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). This Court has supplemental jurisdiction over Count II, arising under Florida law, under 28 U.S.C. § 1367(a), because it arises from the same false statements and the same commercial advertising as Count I and forms part of the same case or controversy.

8. This Court has personal jurisdiction over American Railways under Fla. Stat. § 48.193(1)(a)(2), because American Railways committed tortious acts within Florida: false advertising, false designation of origin, and unfair competition are intentional torts, and American Railways committed them in Florida by exhibiting and distributing the false and misleading marketing described in paragraphs 27 through 29 at the Hollywood trade show and by displaying and disseminating the false and misleading advertising to customers in Florida through its interactive websites accessible in this State.

9. Jurisdiction also lies under Fla. Stat. § 48.193(1)(a)(1), because American Railways operated, conducted, engaged in, or carried on a business or business venture in Florida through the same conduct. This Court has personal jurisdiction over Alghusain individually because he personally and intentionally directed the tortious conduct expressly aimed at Florida, and was physically present in Florida in connection with the trade-show exhibition described below; Florida's corporate-shield doctrine does not bar jurisdiction over an individual who commits intentional torts aimed at the forum or who commits a tortious act while physically present in the State. Defendants' Florida contacts are directly related to the claims in this Complaint, because the Florida activity marketed the same "American Railways" and "US Railways" brands and the same

rail services whose history and experience are falsely described in the advertising at issue, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District, including Defendants' exhibition and marketing of rail services at the trade show in Hollywood, Broward County, Florida, described below, and the dissemination of the false and misleading advertising to, and the resulting injury to Plaintiff in, this District.

## FACTUAL BACKGROUND

### A. The disputed marks and the March 23, 2026 assignment

11. Plaintiff owns and uses the mark US RAIL SYSTEMS in connection with rail services, including as reflected in Registration No. 8,257,883, issued on the Supplemental Register, and in pending Application Serial No. 99,476,207 for US RAIL SYSTEMS (logo). Defendants claim rights in the marks AMERICAN RAILWAYS and US RAILWAYS, including as reflected in pending Application Serial No. 99,503,375 for AMERICAN RAILWAYS and Application Serial No. 99,510,305 for US RAILWAYS.

12. On March 23, 2026, American Railways LLC assigned to Alghusain individually, for one dollar and unspecified other consideration, all right, title, and interest in Application Serial Nos. 99,503,375 and 99,510,305, together with associated common-law rights, goodwill, and causes of action. Alghusain signed the assignment on both sides of the transaction, as "Sole Owner" of American Railways LLC as assignor and individually as assignee. The assignment is not itself pleaded as a separate claim in this Complaint; it is alleged to show Alghusain's sole ownership and control of American Railways and his personal direction of the marks and advertising at issue.

**B. Defendants' commercial advertising**

13. Defendants advertise their rail services in interstate commerce through, among other channels, americanrailways.com, usrailways.com, and the "American Railways™" LinkedIn account. That advertising is directed to rail-industry customers, including public agencies and general contractors evaluating vendors for rail welding, grounding, signaling, and power-bonding work, and it makes specific, quantifiable factual claims about Defendants' history and track record, not mere puffery or opinion.

14. Americanrailways.com states a "Year of Establishment" of 2009. The same site states "500+ Railway Projects Completed," "1 Million Welds completed," and "50+ Industry Partners," and its footer reads "© 2026 American Railways™, a US Railways™ Company." See Exhibit 1, attached, corresponding to screenshot of said website.

15. Usrailways.com's footer claims "Copyright 2002–2026" for both "US RAILWAYS™ COMPANY" and "AMERICAN RAILWAYS™, LLC," and its "About" page describes American Railways in terms that present it as an established rail-services provider. See Exhibit 2, attached, corresponding to screenshot of said website.

16. A post titled "Trademark Notice and Enforcement Statement," published under the "American Railways™" LinkedIn account, asserts that the marks US Rail™, US Railways™, American Rail™, and American Railways™ "are the exclusive property of American Railways™, LLC, continuously owned and operated by the company since at least 2007," and threatens enforcement against unauthorized use. The same LinkedIn account's footer separately claims "© 2002–2025 American Railways™, LLC." See Exhibit 3, attached, corresponding to screenshot of said website.

17. Americanrailways.com advertises that its "mobile division can travel anywhere in the USA, Canada and Mexico" performing rail welding, signal and power bonding, and grounding services, and both websites provide a means of directly contacting Defendants to request pricing or availability. Defendants thus solicit business nationwide, including in Florida, through interactive websites accessible in Florida, rather than through purely passive, informational pages.

**C. The founding-date and continuous-ownership claims are literally false**

18. The 2009 "Year of Establishment" claim, the "since at least 2007" continuous-ownership claim, and the 2002 copyright claims are literally false as to the American Railways business Defendants actually operate. Michigan business records show that American Railways L.L.C., Identification No. 802124075, was not formed until October 16, 2017, and remains active with Alghusain listed as resident agent at the Detroit address alleged above.

19. California business records confirm the same conclusion from the other direction: no "American Railways" entity of any kind existed in California before October 2021, and the earliest Alghusain-connected business entity located in that search, AMIDAC LLC, formed March 3, 2011, operated under a different name entirely, in connection with an Ohio venture, not under any "American Railways" name. There is no predecessor business in the record that a 2009 "American Railways" founding date, a 2007 continuous-ownership date, or a 2002 copyright date could honestly describe.

20. The public web record points the same way. The americanrailways.com domain has existed in some form for many years, but a capture from August 17, 2013 shows the domain hosting generic, unrelated stock-photo content of the kind associated with a parked or placeholder domain, not any rail-welding business. A capture from September 21, 2002—the first year of the copyright Defendants claim—shows the domain newly registered at NameBargain.com and

offered for sale, under the legend "Make an Offer to Buy This Name (min $200.00)," with no American Railways business at the domain at all. The earliest snapshot located showing the site actually operating as the "American Railways" rail business is dated July 24, 2021. A domain's earlier existence as a parked domain is not a business founded in 2009, owned continuously since 2007, or in copyright since 2002. See Exhibit 4, attached, corresponding to said screenshots.

21. Defendants knew or should have known these dates were false. Alghusain, as sole owner and resident agent of the Michigan entity formed in 2017, knows when that entity was formed, and no entity by the "American Railways" name existed in 2002, 2007, or 2009 to own marks continuously from those dates or to hold a copyright from 2002.

22. For completeness, Plaintiff alleges that on May 9, 2016, the Summit County, Ohio Court of Common Pleas entered a default judgment in American Rail, LLC v. Ameer Alghusain, Case No. CV-2016-02-1075, confirming American Rail, LLC, not Alghusain, as sole owner of the Ohio trade names "American Rail" and "American Railways," among other relief. The judgment also confirmed American Rail, LLC as sole owner of the registered trademark QUIKWELD, Registration No. 4,136,801, and of the unregistered marks QUIKBOND, QUIKIGNITE, QUIKCLIP, and QUIKMOLD, and it permanently enjoined Alghusain and his AMIDAC companies from using that subject intellectual property in any printed or electronic materials, on any websites owned or controlled by them, or on social media. That judgment was entered on default, after Alghusain failed to answer, and Plaintiff does not rely on it alone; Plaintiff relies primarily on the Michigan and California formation records alleged above. The 2016 judgment is alleged only because it further contradicts any claim of continuous "American Railways" ownership by Alghusain from 2007.

**D. The projects, partner figures, and the photographs are false or misleading**

23. Defendants' claims of "500+ Railway Projects Completed," "1 Million Welds completed," and "50+ Industry Partners" are false and, in any event, materially misleading when read in the context of the website as a whole. A business that, on the corporate record, did not exist under the "American Railways" name until it was formed in Michigan on October 16, 2017, and that did not operate a website as that business until July 24, 2021 at the earliest, could not have completed more than 500 railway projects and one million welds, or established more than 50 industry partnerships, as the advertising claims. The figures are published alongside the literally false 2009 founding date, the false "since at least 2007" continuous-ownership claim, and the false 2002 copyright claims, and they present an operating history and scale of performance that the Michigan and California formation records and the public web record directly contradict. The statements are therefore false, and at a minimum are misleading in context and likely to deceive the rail-industry customers to whom they are directed.

24. The photographs displayed on americanrailways.com compound the misimpression. Defendants display photographs in contexts that present them as Defendants' own projects, products, and work: on the homepage, in a gallery titled "Explore Our Work" and headed "Our Railway Projects"; on the services page, under the heading "Installation & Contracting Services" and text describing Defendants' installation and contracting capabilities; and on the products page, beside descriptions of products and capabilities Defendants claim as their own, including the statement that "[o]ur in-house capabilities include precision fabrication, drilling, welding, chassis modification, reinforcement, and mounting." A reasonable viewer would understand photographs presented in those contexts as photographs of projects Defendants actually performed, products Defendants actually make, and work Defendants actually did. See Exhibit 5, corresponding to screenshots and images from Defendants' website.

25. One of those photographs—a photograph of a white hi-rail utility truck with its headlights on, displayed in the "Our Railway Projects" gallery and again on the products page under the heading "Custom Hi-Rail Trucks"—is not a photograph of Defendants' truck or of any project Defendants performed. It is a photograph of a crew truck of Midwest Railway Services LLC, an unrelated Wisconsin rail contractor, published by Midwest on its Facebook page on August 26, 2018, as a photograph of its own crews working overnight in Dallas, Texas. Defendants' copy is cropped and color-adjusted, but the truck, the buildings behind it, and the track layout are identical. See Exhibit 6, corresponding to the third-party source of the photograph. Defendants have no connection, on information and belief, to Midwest Railway Services or to the work pictured.

26. A second photograph—a photograph of a yellow rail derail device with paired blue light housings, displayed on the homepage, including under the heading "Intelligent Yard Protection," and on the services page—depicts, on information and belief, a hinged derail manufactured by Western-Cullen-Hayes, Inc., a third-party manufacturer of railroad safety equipment. The manufacturer's name is partly displayed on the product itself: in Defendants' own close-up photograph of the device, a manufacturer's label on the derail reads "WESTERN-…" before the remaining text is obscured. The photograph is presented in the same "our work" context as the photograph above, and it is not, on information and belief, a photograph of a product Defendants manufacture or of Defendants' own completed work. Plaintiff does not allege that another photograph displayed by Defendants, of a pail marked "AMERICAN RAILWAYS," is a third-party photograph.

27. A third photograph—a photograph of a welder welding a steel I-beam inside an industrial building, displayed on the products page beside the heading "Custom Chassis & Trucks"

and text stating that Defendants' "in-house capabilities include precision fabrication, drilling, welding"—is a stock photograph, not a photograph of Defendants' facility, personnel, or work. The identical photograph is published by Lucas Industrial, an unrelated Tennessee structural-welding company, on the structural-welding page of its own website, where it illustrates that company's services. See Exhibit 7, corresponding to the third-party source of the photograph. Presenting other companies' photographs as if they depicted Defendants' own completed work, products, and capabilities is a misleading representation of fact that is likely to deceive the relevant purchasing public, and it functions as visual proof for the "500+ Railway Projects" and "1 Million Welds" claims. The photographs appear in Defendants' commercial advertising or promotion, directed to the rail-industry customers Defendants solicit. A public agency or general contractor evaluating those credentials in a bid or vendor-qualification process would reasonably read the website to mean that Defendants performed the work pictured and have the capabilities pictured, not that they reproduced other companies' photographs, and that misimpression is material to the vendor-qualification and award decisions described in paragraph 32.

28. The products page makes the same kind of claim for a product itself, and not only through photographs. The page is titled "What we manufacture?" and describes American Railways as "an original manufacturer of essential products for the building of high-performance and safe railway systems," and, under the heading "Advanced Railroad Safety Systems," it lists "AUTO-ENGAGE PROTECTION AUDIBLE LIGHTS" among the products American Railways offers as a manufacturer. On information and belief, the AutoEngage derail light is not a product Defendants manufacture: the clear-lens AutoEngage Derail Light is a product of Rail Electrical Services LLC, which markets it, under its RailEPS name, as one of the first products in the RES BlueLink™ Smart Yard System, a platform of railroad safety and protection devices. See Exhibit

5, corresponding to screenshots of Defendants' products page, and Exhibit 6, corresponding to the third-party source for the AutoEngage product. Presenting another company's product, on a page that asks "What we manufacture?," as a product Defendants manufacture is a misleading representation of fact that is likely to deceive the relevant purchasing public, and it is material to the vendor-qualification and award decisions described in paragraph 32, for the same reasons alleged above as to the photographs.

**E. Defendants' Florida contacts**

29. On January 7 to 9, 2026, Defendants exhibited at the National Railroad Construction & Maintenance Association (NRC) trade show in Hollywood, Broward County, Florida, at The Diplomat Beach Resort, Booth 618, marketing rail-welding, rail-grounding, signaling, and power-bonding services under a "Rail Force 1™" banner. The show's official exhibitor directory lists "American Railways" at Booth 618, with americanrailways.com as the listed website and Alghusain personally named as the exhibitor's contact. See Exhibit 8, corresponding to screenshots of Defendant's NRC-REMSA 2026 exhibitor profile and screenshots from LinkedIn and Instagram promoting and demonstrating Defendants at the NRC event.

30. That Florida exhibition was Defendants' own conduct directed into Florida, independent of Plaintiff. It marketed the same "American Railways" and "US Railways" brands and the same rail services whose history and experience are falsely described in the advertising alleged above, and it solicited rail-industry business from attendees, including public-agency and contractor decision-makers of the kind who evaluate vendors on experience and track record.

31. Separately, Defendants' websites, as alleged above, solicit pricing and availability requests nationwide, including from Florida, and are accessible in Florida. Defendants hold

themselves out as willing to travel anywhere in the United States to perform rail work, including in Florida.

**F. Materiality, deception, and competitive injury**

32. The false statements alleged above are material to purchasing decisions. In rail-agency and contractor bidding and vendor qualification, a vendor's claimed founding date, length of continuous operation, number of projects completed, number of welds completed, and number of industry partners are credentials on which a reasonable decision-maker relies in assessing experience, reliability, and capacity. A vendor that claims to have operated since 2009, or since 2007, and to have completed more than 500 projects and one million welds, presents itself as materially more experienced than a vendor formed in 2017 whose business website first operated as that business in 2021.

33. The statements are likely to deceive a substantial portion of the intended audience. They are stated as specific facts—a year, a project count, a weld count, a partner count, and photographs presented as the advertiser's own work—not as vague praise, and nothing on the websites discloses that the Michigan entity was formed in 2017, that no "American Railways" entity existed in California before 2021, or that the photographs described above are third parties' photographs.

34. Plaintiff is a direct competitor of Defendants for the same rail work, and its injury flows directly from the deception alleged. Defendants' inflated credentials divert business and bidding opportunities from Plaintiff, diminish Plaintiff's goodwill and competitive standing with the same agencies and contractors, and force Plaintiff to compete against a falsely inflated track record. Plaintiff has suffered actual damages, including lost sales and lost bidding opportunities,

in an amount to be proved at trial, and will continue to suffer such injury unless Defendants are enjoined.

35. Defendants' conduct is willful for purposes of the relief sought below, at least as to the founding-date and continuous-ownership claims: Alghusain, as sole owner and resident agent of an entity formed in 2017, published and continued to publish 2009, 2007, and 2002 dates that he knew or should have known were false, and published an enforcement statement threatening third parties on the basis of that claimed continuous ownership.

36. Plaintiff has no adequate remedy at law for the continuing publication of the false advertising alleged. Without injunctive relief, Defendants will continue to present the false history and experience credentials to the same customers Plaintiff competes for, and Plaintiff's damages will continue to accrue and will be difficult to quantify fully after the fact.

**COUNT I**

**FALSE ADVERTISING — LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)**

*(Against All Defendants)*

37. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 36, inclusive.

38. Defendants, in commercial advertising in interstate commerce, have made false or misleading statements of fact that misrepresent the nature, characteristics, and qualities of their services, including: (a) that the American Railways business was established in 2009; (b) that American Railways has continuously owned and operated the marks at issue since at least 2007 and holds copyrights since 2002; (c) that Defendants have completed more than 500 railway projects, one million welds, and have more than 50 industry partners, as alleged above; and (d) by presenting third parties' photographs as if they depicted Defendants' own completed projects and

work; and (e) that Defendants manufacture the AutoEngage derail light, a third-party manufacturer's product, as alleged above.

39. The statements alleged above are false or misleading, as alleged in paragraphs 17 through 28, are material to the purchasing decisions of rail agencies and contractors, and are likely to cause, and have caused, competitive injury to Plaintiff, a direct competitor, within the meaning of *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

40. Defendants' false advertising was willful, at least as to the founding-date and continuous-ownership claims, for the reasons alleged above, and Plaintiff is entitled to the relief set forth in the Prayer for Relief below, including injunctive relief, actual damages, disgorgement of Defendants' profits under 15 U.S.C. § 1117(a) to the extent proved, and, to the extent the Court finds this an exceptional case, reasonable attorney's fees under 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against all Defendants on this Count and grant the relief set forth in the Prayer for Relief below.

**COUNT II**

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES**
**Fla. Stat. §§ 501.204, 501.211**
*(Against All Defendants)*

41. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 36, inclusive.

42. Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, within the meaning of Fla. Stat. § 501.204, by publishing the same false and misleading statements alleged in Count I, including the false 2009 founding date, the false continuous-ownership and 2002 copyright claims, the false or misleading project, weld, and partner figures, the claim that Defendants manufacture the AutoEngage derail light, a third-party product, and the presentation of third-party manufacturers' product photographs as Defendants' own work. Defendants' violations of Section 43(a)(1)(B) of the Lanham Act independently constitute violations of FDUTPA as unfair methods of competition under Fla. Stat. § 501.203(3)(c).

43. Defendants' deceptive acts were directed in part to Florida, including through their exhibition and marketing of the same brands and services at the Hollywood, Broward County, Florida trade show described above and through websites soliciting business in Florida, and they are therefore within the reach of FDUTPA as applied to conduct occurring in Florida and directed to Florida customers and decision-makers.

44. Plaintiff is a person aggrieved by Defendants' violations of FDUTPA within the meaning of Fla. Stat. § 501.211(1), because its legal rights have been and will continue to be adversely affected by Defendants' unfair and deceptive practices, and Plaintiff is entitled to a declaratory judgment and to injunctive relief under that section. Defendants' deceptive acts have

also directly caused Plaintiff a loss, including lost sales and lost bidding opportunities with the same agencies and contractors to whom the false credentials were directed, for which Plaintiff seeks its actual damages under Fla. Stat. § 501.211(2) and attorney's fees and costs under Fla. Stat. § 501.2105 to the extent proved and awarded by the Court.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against all Defendants on this Count and grant the relief set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally as applicable, as follows:

(a) A permanent injunction enjoining Defendants, and all persons acting in concert with them, from publishing, displaying, or distributing the false statements alleged in this Complaint, including any claim that the American Railways business was established in 2009, continuously owned the marks at issue since 2007, or holds copyrights since 2002, any false or misleading claim of more than 500 projects, one million welds, or more than 50 industry partners, any claim that Defendants manufacture the AutoEngage derail light or any other product of a third-party manufacturer, and any presentation of third-party manufacturers' product photographs as Defendants' own completed work;

(b) An order requiring Defendants to correct the false advertising alleged, including by removing or correcting the false statements from americanrailways.com, usrailways.com, and the "American Railways™" LinkedIn account, and by issuing corrective advertising in the same channels in which the false statements were published, for a period to be determined by the Court;

(c) An award of Plaintiff's actual damages, including lost profits from lost sales and lost bidding opportunities, in an amount to be proved at trial, under the Lanham Act and, to the extent recoverable, FDUTPA;

(d) Disgorgement of Defendants' profits attributable to the false advertising, under 15 U.S.C. § 1117(a), to the extent proved;

(e) Reasonable attorney's fees and costs, under 15 U.S.C. § 1117(a) to the extent the Court finds this an exceptional case, and under Fla. Stat. § 501.2105; and

(f) Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated: November 19, 2026.

Respectfully submitted,

*<u>/s/ Christian Sanchelima</u>*
Christian Sanchelima, Esq.
Florida Bar No. 107751
Email: chris@sanchelima.com
Liany Estevez, Esq.
Florida Bar No. 1024902
Email: estevez@sanchelima.com
Sanchelima & Associates, P.A.
235 S.W. Le Jeune Road
Miami, Florida 33134
Telephone: (305) 447-1617
*Attorneys for Plaintiff*

**VERIFICATION**

I, Scott Richards, declare as follows:

I am the chief executive officer of Plaintiff US Rail Systems, Inc., and I am authorized to make this verification on its behalf.

I have read the foregoing COMPLAINT and I am familiar with its contents. The matters stated therein are true to the best of my knowledge, information, and belief.

Executed on November 18, 2026 at Destin, Florida

I declare under penalty of perjury that the foregoing is true and correct.

Scott Richards